UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HUHTAMAKI, INC., </br></br> Plaintiff, </br></br> v. </br></br> UNITED STATES, </br></br> Defendant. | Court No. 24-00050 |

## COMPLAINT

Plaintiff Huhtamaki, Inc. ("Plaintiff"), through its attorneys, The Bristol Group PLLC, alleges the following against Defendant United States:

### THE CONTESTED CUSTOMS DECISION

1. Plaintiff has commenced this action to contest the denial by U.S. Customs and Border Protection ("CBP") of Plaintiff's Protest Number 270922100208 (the "Protest") involving the classification of certain clamshell containers composed of a combination of molded bamboo pulp and bagasse (sugar cane pulp) (the "Clamshell Containers").

### JURISDICTION

2. Plaintiff brings this action under sections 514(a) and 515 of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. §§ 1514(a) and 1515.  This Court possesses exclusive jurisdiction of actions arising under those provisions pursuant to 28 U.S.C. § 1581(a).

### STANDARD OF REVIEW

3. This Court "shall make its determinations upon the basis of the record made before the court" in "{c}ivil actions contesting the denial of a protest under section 515 of the

{Act}." 28 U.S.C. § 2640(a)(1). "Customs classification decisions are reviewed de novo." *Telebrands Corp. v. United States*, 36 CIT 1231, 1234, 865 F. Supp. 2d 1277, 1279–80 (2012) (citing 28 U.S.C. § 2640(a)(1)).

    4.    CBP's factual findings are presumed to be correct, and the party challenging the decision has the burden of proving otherwise. *See* 28 U.S.C. § 2639(a)(1); *Wilton Indus. v. United States*, 31 CIT 863, 865, 493 F. Supp. 2d 1294, 1298 n.5 (2007). Nevertheless, "{a} party challenging Customs' preferred classification may satisfy its burden of proof simply by demonstrating that Customs' classification is incorrect, without necessarily providing the correct classification." *Arko Foods Int'l, Inc. v. United States*, 33 CIT 1891, 1894, 679 F. Supp. 2d 1369, 1373 (2009) (citing *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984)). Ultimately, it is the Court's duty to find the correct result, by whatever procedure is best suited to the case at hand. *Id*. "When there is a dispute over classification, the court first undertakes the legal question to 'construe the relevant classification headings' and then undertakes the factual question to 'determine under which of the properly construed tariff terms the merchandise at issue falls.'" *Id.* at 1894–95, 679 F. Supp. 2d at 1373 (quoting *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998)).

## STANDING OF PLAINTIFF

    5.    Plaintiff is the importer of record of the merchandise that is the subject of this action and is the real party in interest.

    6.    Plaintiff filed the Protest that is the subject of this action. Plaintiff consequently has standing to bring this action under 28 U.S.C. § 2631(a).

## TIMELINESS OF PROTEST

7.  The entries that are the subject of this action are Entry Number ARV-6532529-7, which was entered on November 6, 2021, together with Entry Numbers ARV-6532578-4, ARV-6532579-2, and ARV-6532580-0, which were entered on November 8, 2021 (collectively, the "Entries").

8.  The date of liquidation for the Entries was October 7, 2022.

9.  The Protest was filed on December 7, 2022. That filing was within 180 days after the date of liquidation for the Entries. The Protest was, therefore, timely filed under section 514(c)(3)(A) of the Act, 19 U.S.C. § 1514(c)(3)(A).

## STATEMENT THAT ALL LIQUIDATED DUTIES HAVE BEEN PAID

10.  All liquidated duties, taxes, and charges were paid prior to the commencement of this action.

## TIMELINESS OF ACTION

11.  On August 28, 2023, CBP notified Plaintiff by email that the Protest had been denied.

12.  In accordance with sections 514(a) and 515(a) of the Act, 19 U.S.C. §§ 1514(a) and 1515(a), and 28 U.S.C. § 2636(a)(1), Plaintiff timely filed the Summons in this case on February 23, 2024 (ECF No. 1). The Summons was filed within 180 days after the date of emailing of the notice of denial of the Protest. Further, this Complaint is being filed within 24 months of the Summons. Accordingly, this action has been timely filed. *See* USCIT R. 3(a)(1), 6(a), 83.

## DESCRIPTION OF THE MERCHANDISE

13.     The merchandise that is the subject of the Protest consists of certain Clamshell Containers composed of molded pulp made from a combination of bagasse pulp and bamboo pulp.

14.     The Clamshell Containers are suitable for use, principally, as food containers.

## CBP'S CLASSIFICATION OF THE MERCHANDISE AND RATE OF DUTY IMPOSED

15.     The Clamshell Containers were entered under subheadings 4823.70.0040 and 9903.88.03 of the Harmonized Tariff Schedule of the United States ("HTSUS").

16.     At liquidation, CBP classified the Clamshell Containers under subheading 4823.70.0040, HTSUS.

17.     At liquidation, CBP also classified the Clamshell Containers as subject to duties under section 301 of Title III of the Trade Act of 1974 (the "Section 301 duty"), as specified in subheading 9903.88.03, HTSUS.

18.     Accordingly, CBP applied a duty rate of 25 percent *ad valorem* to the Clamshell Containers under subheading 9903.88.03, HTSUS.

19.     Subheading 9903.88.03, HTSUS, provides for the application of a 25 percent *ad valorem* duty "{e}xcept as provided in" certain headings, including heading 9903.88.67, on "articles the product of China, as provided for in U.S. note 20(e) to this subchapter and as provided for in the subheadings enumerated in U.S. note 20(f)."

20.     Following liquidation and the subsequent Protest by Plaintiff claiming that the Clamshell Containers should have been entered duty-free under subheading 9903.88.67, HTSUS, CBP denied the Protest and reaffirmed its classification of the Clamshell Containers under subheading 9903.88.03, HTSUS.

## THE PROPER CLASSIFICATION OF THE MERCHANDISE
## AND RATE OF DUTY

21.     The Clamshell Containers were properly classified upon entry and liquidation under subheading 4823.70.0040, HTSUS.

22.     Subheading 4823.70.0040, HTSUS covers:

> Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers:
> . . . .
>   Molded or pressed articles of paper pulp
> . . . .
>           Other{.}

23.     However, CBP improperly classified the Clamshell Containers upon liquidation under subheading 9903.88.03, HTSUS.

24.     U.S. note 20(e) to subchapter III of chapter 99 of the HTSUS, provides:

> For the purposes of heading 9903.88.03, products of China, as provided for in this note, shall be subject to an additional 25 percent ad valorem rate of duty.  The products of China that are subject to an additional 25 percent ad valorem rate of duty under heading 9903.88.03 are products of China that are classified in the subheadings enumerated in U.S. note 20(f) to subchapter III.  All products of China that are classified in the subheadings enumerated in U.S. note 20(f) to subchapter III are subject to the additional 25 percent ad valorem rate of duty imposed by heading 9903.88.03, except products of China granted an exclusion by the U.S. Trade Representative and provided for in … (18) heading 9903.88.67 and U.S. note 20(ttt)(iii) to subchapter III of chapter 99{.}

25.     U.S. Note 20(f) to subchapter III of chapter 99 of the HTSUS provides:

> Heading 9903.88.03 applies to all products of China that are classified in the following 8-digit subheadings, except products of China granted an exclusion by the U.S. Trade Representative and provided for in … (18) heading 9903.88.67 and U.S. note 20(ttt)(iii) to subchapter III of chapter 99.

26.     Subheading 4823.70.00, HTSUS is one of the 8-digit subheadings enumerated under U.S. Note 20(f) to subchapter III of chapter 99 of the HTSUS.

27. Subheading 9903.88.67, HTSUS, Revision 1 (2024) applied to:

> Effective with respect to entries on or after October 12, 2021 and through May 31, 2024, articles the product of China, as provided for in U.S. note 20(ttt) to this subchapter, covered by an exclusion granted by the U.S. Trade Representative.

28. U.S. Note 20(ttt)(iii) to subchapter III of chapter 99 of the HTSUS provides, *inter alia*, that:

> The U.S. Trade Representative determined to establish a process by which particular products classified in heading 9903.88.03 and provided for in U.S. notes 20(e) and 20(f) to this subchapter could be excluded from the additional duties imposed by heading 9903.88.03{.} See 83 Fed. Reg. 47974 (September 21, 2018) and 84 Fed. Reg. 29576 (June 24, 2019). Pursuant to the product exclusion process, the U.S. Trade Representative has determined that, as provided in heading 9903.88.67, the additional duties provided for in heading 9903.88.03 … shall not apply to the following particular products, which are provided for in the enumerated statistical reporting numbers:
> ….
>> (54) Clamshell containers, pizza pans, lids, compartmentalized and other trays of molded or pressed bamboo pulp, each weighing at least 3g but not more than 95g (described in statistical reporting number 4823.70.0040).

29. The Clamshell Containers are composed of a combination of molded bamboo pulp and sugar cane pulp.

30. The Clamshell Containers each weigh at least 3g but not more than 95g,

31. The Clamshell Containers are properly classified under and are subject to the Section 301 duty Exclusion provided in subheading 9903.88.67 and U.S. Note 20(ttt)(iii)(54) (the "Exclusion").

## STATEMENT OF SUPPORTING FACTS AND LAW

### Introduction

32. This case involves a unique fact pattern, involving the refusal of several CBP representatives to perform their duties as required under a tariff classification ruling, causing Plaintiff to be led on a months-long wild goose chase as to the applicability of the Exclusion.

33. Ultimately, CBP represented to Plaintiff that the Exclusion applied to Plaintiff's Clamshell Containers, but carefully avoided putting this representation in writing.

34. Plaintiff relied on CBP's representation, only to be subsequently informed by CBP that it decided that the Exclusion did not, in fact, apply.

The Classification Ruling

35. On April 18, 2022, Plaintiff's customs broker, Scarbrough International ("Scarbrough"), sought a binding tariff classification ruling from CBP concerning five items (three Clamshell Containers and two round bowls), all of which were constructed of 85 percent sugarcane pulp and 15 percent bamboo pulp (the "Classification Items").

36. Scarbrough notified CBP that Plaintiff wished to import the Classification Items and sought confirmation that the Exclusion applied.

37. On May 13, 2022, in tariff classification ruling N325514 (the "Classification Ruling"), CBP informed Plaintiff that:

> The applicable subheading for the molded paper pulp clamshell containers will be 4823.70.0040, Harmonized Tariff Schedule of the United States (HTSUS), which provides for Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers: Molded or pressed articles of paper pulp: Other. The rate of duty will be free.
>
> The applicable subheading for the molded paper pulp bowls will be 4823.70.0020, HTSUS, which provides for Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers: Molded or pressed articles of paper pulp: Plates, bowls or cups. The rate of duty will be free.
>
> <u>You appear to seek confirmation of the Section 301 trade remedy exclusion status of these goods. Determinations on Section 301 exclusions will be made independently of this prospective tariff classification ruling. For further information regarding specific entry issues, please contact your</u>

> assigned CBP Center of Excellence & Expertise office prior to importation of the goods.
>
> Pursuant to U.S. Note 20 to Subchapter III, Chapter 99, HTSUS, products of China classified under subheadings 4823.70.0020 or 4823.70.0040, HTSUS, unless specifically excluded, are subject to an additional 25% percent *ad valorem* rate of duty. At the time of importation, you must report the Chapter 99 subheading, 9903.88.03, in addition to subheading 4823.70.0020 or 4823.70.0040, HTSUS, listed above. (emphasis added).

CBP's Repeated Refusals to Answer the Exclusion Inquiries

38. In accordance with CBP's directions in the Classification Ruling, beginning on May 13, 2022, and through August 3, 2022, Scarbrough made repeated requests of the assigned CBP Center of Excellence & Expertise ("CEE"), the Consumer Products and Mass Merchandising Center ("CPMM Center"), for a determination on whether the Exclusion applied to Plaintiff's imported merchandise (the "Exclusion Inquiries").

39. Notwithstanding CBP's refusal in the Classification Ruling to provide confirmation that the Exclusion applied, as demonstrated below, CBP then systematically refused to provide a response to the Exclusion Inquiries for several months.

40. On May 31, 2022, Linda Golf, the Assistant Center Director, Partnership (the "Assistant Center Director") of the CPMM Center directed Scarbrough to Supervisory Import Specialist Fernando Bejar ("SIS Bejar") to provide a response to the Exclusion Inquiries.

41. On June 1, 2022, SIS Bejar declined to provide a response and instead directed the Exclusion Inquiries to Import Specialist Gwen Neloms ("IS Neloms").

42. In and around early June 2022, IS Neloms, in turn, refused to provide a response to the Exclusion Inquiries, and directed Scarbrough to contact CBP's Trade Remedy Branch ("Trade Remedy") to seek a response.

43. In and around early June 2022, Trade Remedy similarly refused to provide a response to the Exclusion Inquiries, and instead redirected Scarbrough back to IS Neloms for a response.

44. On June 14, 2022, Scarbrough notified IS Neloms that Trade Remedy refused to provide a response to the Exclusion Inquiries and had, in fact, redirected the Exclusion Inquiries back to IS Neloms for a response.

45. On June 17, 2022, given the apparent unwillingness of either the CEE or Trade Remedy to provide a response to the Exclusion Inquiries, Scarbrough again contacted the CEE to reiterate that Scarbrough was urgently seeking a response to the Exclusion Inquiries.

46. On June 29, 2022, having received no reply to its June 17, 2022, email correspondence, Scarbrough again emailed the CEE to seek a response to the Exclusion Inquiries.

47. On July 6, 2022, the Assistant Center Director contacted Scarbrough to apologize for the fact that Scarbrough was being referred to different offices and instructed Scarbrough to seek a binding ruling regarding the Exclusion Inquiries.

48. On July 7, 2022, Scarbrough responded to the Assistant Center Director to notify her that Scarbrough, at that juncture, had been trying to resolve the Exclusion Inquiries for months and, also, <u>that the reason the Exclusion Inquiries had been made was because Scarbrough already had sought—and obtained— a binding Classification Ruling that stated that the Exclusion Inquiries be directed to the CEE</u>.  In this correspondence, Scarbrough also notified the Assistant Center Director that it was not clear to Scarbrough who could provide a response to the Exclusion Inquiries, if the National Commodity Specialist Division, the CEE, and Trade Remedy could not do so.

49. On July 12, 2022, the Assistant Center Director directed the Exclusion Inquiries back to SIS Bejar to provide an advisory opinion and noted that SIS Bejar's team would be reviewing any entries that would be filed by Plaintiff using the Exclusion.

50. On July 13, 2022, SIS Bejar, again, redirected the Exclusion Inquiries to IS Neloms to provide a response.

51. On July 13, 2022, in response to SIS Bejar's repeated redirection of the Exclusion Inquiries to IS Neloms, Scarbrough notified CBP that it was IS Neloms who previously told Scarbrough that she could not provide a response to the Exclusion Inquiries, and, furthermore, that it was IS Neloms who previously directed Scarbrough to Trade Remedy for a response to the Exclusion Inquiries.

52. On July 18, 2022, having received no reply to its July 13, 2022, email correspondence, Scarbrough followed up with CBP by email, and received no reply.

53. On July 19, 2022, in a further attempt to obtain a response to the Exclusion Inquiries, Scarbrough spoke separately with a national account manager for the CPMM Center, Shawn Filion ("Account Manager Filion").

54. On July 19, 2022, Account Manager Filion emailed Scarbrough and requested information pertaining to the Classification Ruling, the Exclusion Inquiries, and the identity of the individuals within CBP who Scarbrough previously contacted in its pursuit of a response to the Exclusion Inquiries.

55. On July 20, 2022, Scarbrough duly provided the requested information in response to Account Manager Filion's request.

56. On August 1, 2022, having received no reply to its July 20, 2022, email, Scarbrough sent an email to Account Manager Filion asking if he had identified someone at the CEE to provide an advisory opinion on the Exclusion Inquiries.

57. On August 2, 2022, Account Manager Filion emailed Scarbrough to remind Scarbrough that the Assistant Center Director had already directed the Exclusion Inquiries to SIS Bejar and, if Scarbrough did not receive a response from SIS Bejar, Scarbrough should then contact SIS Bejar's supervisor, another assistant center director for CPMM, Mr. Paul Sumbi.

58. On August 2, 2022, Scarbrough followed up again with CBP, having received no reply to either its July 13, 2022, email correspondence or its July 18, 2022, follow-up email correspondence.

## The Advisory Opinion

59. On August 3, 2022, IS Neloms emailed Scarborough to inform it that she attempted to contact Scarbrough on August 2, 2022, by telephone but was unsuccessful in doing so, and requested a return call from Scarbrough.

60. On August 3, 2022, Scarbrough received a telephone call from IS Neloms, who stated that, having discussed the matter with SIS Bejar, it was their mutual opinion that the Exclusion applied to the Plaintiff's imported merchandise (the "Advisory Opinion").

61. SIS Bejar and IS Neloms refused to reduce this Advisory Opinion to writing.

## The Protest and The Denial Giving Rise to This Action

62. Between September 2022 and October 2022, to obtain the benefit of the Exclusion, Plaintiff filed approximately seventy-five post summary corrections to reclassify entries of merchandise of the same class or kind as the Clamshell Containers that had entered between December 2021 and August 2022 (the "Post Summary Corrections").

63. In and around the fourth quarter of 2022 through the first quarter of 2023, CBP accepted Plaintiff's Post Summary Corrections and issued refunds of the Section 301 duties on the entries they covered.

64. The Entries that are the subject of this action were liquidated on October 7, 2022.

65. On December 5, 2022, relying on both the Advisory Opinion and CBP's previous course of conduct in issuing refunds on the Post Summary Corrections, Plaintiff, through another of its customs brokers, Ascent Logistics ("Ascent"), filed the Protest seeking a refund of Section 301 duties pursuant to Exclusion 9903.88.67.

66. On February 23, 2023, CBP requested from Plaintiff "a material breakdown by percentage and packing lists with weights in grams" of the Clamshell Containers to determine their eligibility for the Exclusion.

67. On February 23, 2023, Ascent provided CBP with supporting documentation demonstrating the Clamshell Containers' eligibility for the Exclusion.

68. On March 2, 2023, CBP informed Ascent that it had determined that the "essential character of the clamshell {containers} is the 85% sugarcane pulp (bagasse)," that the "exclusion is for clamshell containers made of bamboo pulp" and, therefore, that the "merchandise is not eligible for this exclusion."

69. On March 7, 2023, Ascent responded to CBP stating that the Exclusion does not state that qualifying merchandise must be made "exclusively {of} bamboo pulp". Ascent reiterated that Scarbrough spoke with SIS Bejar and IS Neloms, both of whom had knowledge of the composition of the Clamshell Containers and issued the Advisory Opinion confirming that the Clamshell Containers met the criteria for the Exclusion.

70. On August 28, 2023, CBP notified Plaintiff by email that the Protest was denied "{b}ecause the clamshell containers are composed of 85% sugarcane pulp (bagasse) {and that} Exclusion 9903.88.67 is for clamshell containers composed of bamboo pulp."

## CLAIMS AND BASIS FOR RELIEF

### Count One

Incorrect Classification

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70, *supra*.

72. The Exclusion provides for the duty-free exclusion of "{c}lamshell containers, pizza pans, lids, compartmentalized and other trays of molded or pressed bamboo pulp, each weighing at least 3g but not more than 95g (described in statistical reporting number 4823.70.0040)."

73. The Exclusion does not provide that the Exclusion applies only to containers made exclusively of bamboo pulp.

74. The Clamshell Containers are made of molded pulp consisting a combination of bamboo pulp and sugar cane pulp, each weighing at least 3g but not more than 95g (described in statistical reporting number 4823.70.0040), and were imported while the Exclusion was in effect.

75. The Clamshell Containers are therefore properly subject to classification under subheading 9903.88.67, HTSUS, subject to the application of the Exclusion.

76. CBP's previous course of conduct in issuing refunds of Section 301 duties for merchandise of the same class or kind as the Clamshell Containers, based on the applicability of the Exclusion, was correct.

77. CBP's decision to classify the Clamshell Containers under subheading 9903.88.03, HTSUS—without applying the Exclusion—was incorrect.

78. The Clamshell Containers are properly classified under subheading 9903.88.67, HTSUS, subject to the application of the Exclusion, and are duty free.

## Count Two

Equitable Estoppel

79. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 78, *supra*.

80. Plaintiff requested a binding classification ruling pursuant to 19 C.F.R. Part 177 that the Exclusion applies to its imported merchandise.

81. In the Classification Ruling, CBP did not address whether the Exclusion applies to Plaintiff's imported merchandise; rather, CBP instructed Plaintiff to contact its assigned CEE for a determination regarding whether Plaintiff's imported merchandise qualifies for the Exclusion.

82. Following CBP's instructions in the Classification Ruling, Plaintiff immediately contacted its assigned CEE to request a determination regarding whether Plaintiff's imported merchandise qualifies for the Exclusion.

83. CBP repeatedly refused to provide the requested determination for several months.

84. Ultimately, through the actions of IS Neloms and SIS Bejar, CBP represented to Plaintiff that the Exclusion applied to Plaintiff's imported merchandise, including the Clamshell Containers.

85. CBP indicated its agreement that the Exclusion applied to the Plaintiff's imported merchandise, including the Clamshell Containers, when CBP accepted and issued refunds on multiple Post Summary Corrections for merchandise of the same class or kind as the Clamshell Containers.

86. Based on CBP's representation that Exclusion applied to Plaintiff's imported merchandise, including the Clamshell Containers, and CBP's prior course of conduct in accepting and issuing refunds of Section 301 duties on multiple Post Summary Corrections based on the applicability of the Exclusion, Plaintiff reasonably inferred that CBP would not apply the Section 301 duties on Plaintiff's imported merchandise, including the Clamshell Containers.

87. In reliance on CBP's assurances to Plaintiff that the Exclusion applied and conduct in accepting and issuing refunds of Section 301 duties on multiple Post Summary Corrections based on the applicability of the Exclusion, Plaintiff continued to import molded pulp clamshell containers that are of the same class or kind as the Clamshell Containers subject to this action.

88. In reliance on CBP's assurances to Plaintiff that the Exclusion applied and conduct in accepting and issuing refunds of Section 301 duties on multiple Post Summary Corrections based on the applicability of the Exclusion, Plaintiff filed the Protest whose denial gave rise to this action.

89. CBP is the only authority from which Plaintiff could obtain a determination regarding whether Plaintiff's imported merchandise, including the Clamshell Containers, qualifies for the Exclusion, and the Assistant Center Director represented that SIS Bejar's team, which provided the determination, would review Plaintiff's entries using the Exclusion. Accordingly, Plaintiff's reliance on that determination was reasonable and foreseeable under the circumstances.

90. CBP is the only authority from which Plaintiff could seek a determination of the Exclusion's applicability and, therefore, its reliance on CBP's prior course of conduct and its assurances was reasonable and foreseeable under the circumstances.

91. CBP, however, denied the Protest—contrary to its prior representations and treatment of the Post Summary Corrections.

92. Due to Plaintiff's reasonable reliance on CBP's prior representations and course of conduct, and CBP's subsequent denial of the Protest contrary to CBP's prior representations and course of conduct, Plaintiff has suffered losses in the form of the incorrect application of the additional 25 percent *ad valorem* duty to the Clamshell Containers under heading 9903.88.03, HTSUS.

93. Under the doctrine of equitable estoppel, CBP is therefore estopped from classifying the Clamshell Containers under subheading 9903.88.03, HTSUS, without also applying the Exclusion.

## REQUEST FOR JUDGMENT AND RELIEF

For the reasons stated in this Complaint, Plaintiff respectfully requests that the Court:

1. Enter judgment in favor of Plaintiff;

2. Classify the subject merchandise as entered in the Protest and claimed herein, and apply the Exclusion;

3. Direct the CBP Port Director at the port of importation to reliquidate Entry Numbers ARV-6532529-7, ARV-6532578-4, ARV-6532579-2 and ARV-6532580-0, to classify the Clamshell Containers included in those Entry Numbers under subheading 9903.88.67, HTSUS, to apply the Exclusion, and to refund to Plaintiff all duties assessed on the Clamshell Containers, plus interest as provided by law;

4. Direct CBP to classify all merchandise of the same class or kind as the Clamshell Containers as being subject to the Exclusion;

5. Declare that CBP's classification decision to not apply the Exclusion was in error;

6. Declare that CBP is estopped from classifying the Clamshell Containers under subheading 9903.88.03, HTSUS; and

7. Provide such additional and further relief as the Court may deem just and proper.

Dated: May 8, 2025

*/s/ Jennifer M. Smith-Veluz*
Adam H. Gordon, Esq.
Jennifer M. Smith-Veluz, Esq.
Kieran O'Connell, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 1050
Washington, D.C. 20036
Email: jennifer.smith@bristolgrouplaw.com
Tel.: (202) 991-2705

*Counsel to Huhtamaki, Inc.*

## CERTIFICATE OF SERVICE

I, Jennifer M. Smith-Veluz, hereby certify that on May 8, 2025, I caused the foregoing Complaint to be served on the following parties by the United States mail, certified, return receipt requested, postage prepaid, pursuant to USCIT Rule 4(h).

**ON BEHALF OF THE UNITED STATES:**

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
Department of Justice
Civil Division
Room 346, Third Floor
26 Federal Plaza
New York, NY 10278

Director of Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Room 12124
1100 L Street, N.W.
Washington, D.C. 20530

Nico Gurian
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
26 Federal Plaza
Room 346
New York, NY 10278

CBP Assistant Chief Counsel
U.S. Department of Homeland Security
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza - Room 258
New York, NY 10278

 

*/s/ Jennifer M. Smith-Veluz*
Jennifer M. Smith-Veluz
**THE BRISTOL GROUP PLLC**
*Counsel to Huhtamaki, Inc.*